UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------
IN RE:

ELSIE L. DOETSCH CASE NO. 04-63998

Debtor Chapter 7
-----------------------------------------------------
APPEARANCES:

AMY F. QUANDT, ESQ.
Trial Attorney, Office of U.S. Trustee
10 Broad Street
Utica, New York 13501

THOMAS MILLER, ESQ.
Attorney for Debtor
P.O. Box 11472
Albany, NY 12211

JAMES C. COLLINS, ESQ.
Chapter 7 Trustee
P.O. Box 713
Whitney Point, NY 13862-0713

Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge

**MEMORANDUM-DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER**

The Court has under consideration a motion filed on March 27, 2007, by the United States Trustee ("UST") pursuant to § 348(f)(2) of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101-1532 ("Code"). The UST is seeking a determination that an inheritance received by Elsie L. Doetsch ("Debtor") is property of her chapter 7 estate based on allegations that the Debtor's conversion of her case from chapter 13 to chapter 7 was in bad faith. The Debtor filed opposition to the motion on April 17, 2007.

The motion was heard at the Court's regular motion term on April 26, 2007, in Binghamton, New York. Following oral argument, the Court provided the parties with an opportunity to file memoranda of law. The matter was submitted for decision on May 25, 2007.[1]

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1), (b)(2)(A), (E) and (O).

## FACTS

The Debtor filed a voluntary chapter 13 petition (the "Petition") on June 3, 2004. Debtor's chapter 13 plan ("Plan") was confirmed by the Court on November 29, 2004. In her schedules, the Debtor lists an interest in real property (the "residence") valued at $87,000, subject to two mortgages totaling $77,142.51. *See* Schedules A and D, attached to the Petition. The only items of personal property listed by the Debtor include household goods, wearing apparel, an annuity valued at $19,466.69, and a 2002 Toyota Rav 4 valued at $16,585, which Debtor indicates is subject to a security interest in the amount of $8,596. *See* Schedule B, attached to the Petition. All said property, including the Debtor's residence, was claimed by the Debtor as

---

[1] Also submitted for decision was a motion filed on September 11, 2006, by the chapter 7 trustee ("Trustee") seeking an Order compelling the Debtor to turn over the inheritance, as well as tax refunds she received in 2006 (Docket No. 29). The motion was adjourned several times. Because its resolution would depend on the Court's ruling on the UST's motion, the Court indicated that it would reserve on the Trustee's motion, as well.

exempt under New York State law. *See* Schedule C, attached to the Petition. According to the Debtor's schedules, she owed $29,049.79 in unsecured debt.[2] *See* Amended Schedule F, filed August 21, 2004 (Docket No. 12). Except for one debt of $372.81 identified as overdraft protection, the remainder of the Debtor's obligations were comprised of credit card debts. *Id.* The Debtor indicates that she has been employed by Broome-Tioga BOCES for 16 years. At the time she filed her chapter 13 petition in 2004, she was earning a gross salary of $5,044 per month.[3] *See* Schedule I, filed on June 3, 2004. As of May 4, 2006, her gross salary was $4,940.32 per month.[4] *See* Amended Schedule I, filed May 4, 2006 (Docket No. 19). Her net monthly income in 2004 was $3,104.82 and $3,090.46 in 2006. Her monthly expenses totaled $2,717 when she filed her Petition in 2004. *See* Schedule J, attached to her Petition. Expenses amounted to $3,068 when she amended Schedule J (Docket No. 19) in 2006. This left approximately $22.46 in monthly disposable income in May 2006.

Her Plan initially proposed payments of $388 per month over a period of 36 months at a dividend of 58% to unsecured creditors. *See* Exhibit A, attached to UST's motion. The Order

---

[2] According to the Trustee, the "Debtor elected to convert, and amended her Schedule F, listing three (3) more creditors and $7,000.00 more unsecured debt." Memorandum of Law filed by the Trustee on May 24, 2007 ("Trustee's Memorandum of Law"). A review of the docket in the case reveals only one amendment to Schedule F, and that occurred in August 2004, two months after the Debtor filed her Petition and approximately a year and a half before she converted her case.

[3] According to her 2004 Federal income tax return, she identified herself as a psychologist. *See* Exhibit B, attached to the Trustee's Memorandum of Law. However, she acknowledged that she does not hold a Ph.D. *See* Exhibit F, attached to UST's motion.

[4] The Trustee incorrectly states that the Debtor reported a $6,000 increase in her wages on Amended Schedule I. *See* Trustee's Memorandum of Law. Actually, she reported a $104 per month decrease in gross wages or a decrease of approximately $1,200 per year. *Compare* Schedule I, filed on June 3, 2004, with Amended Schedule I, filed on May 4, 2006.

of Confirmation, dated November 29, 2004, provides for monthly payments of $388 for a term of 48 months, however, with direct payments being made by the Debtor outside the Plan on the secured debt. *See* Exhibit B, attached to UST's motion. The Order provides that

> all property of the estate, including any income, earnings or other property which may become property of the estate during administration of the case, which property is not proposed or reasonably contemplated to be distributable to claimants during the Plan, shall revest in the Debtor . . . Such property that may revest in the Debtor shall so revest upon approval of the Court and the Chapter 13 Trustee.

*See* ¶ 13 of the Order of Confirmation.

By letter, dated February 20, 2006, addressed to the chapter 13 trustee, the Debtor indicated that in November 2005 she had been diagnosed with ovarian cancer and was out of work for nine weeks while undergoing chemotherapy. *See* Exhibit E, attached to UST's motion. In the letter, the Debtor requested that she be allowed to keep a portion of her 2005 tax refund to the extent that it exceeded $1,500. *Id.* She also explained that because of the side effects of her chemotherapy, her part-time employer had filled her position with someone else and she would not be able to return to her prior job.[5] *Id.* According to the Debtor, the chapter 13 trustee requested documentation of her medical expenses and job loss to support her request. *See* Exhibit F, attached to UST's motion. On April 24, 2006, the chapter 13 trustee sent a letter to the Debtor's attorney indicating that the Debtor could retain an amount in excess of $1,500 of her tax refund. *See* Exhibit G, attached to UST's motion. The letter also notified her attorney that the Debtor's plan was not feasible "by close to $14,000" and would need to be amended. *Id.*

---

[5] The part-time position was not specifically identified on Schedule I or in the Statement of Affairs filed with her Petition. Her tax return for 2004, however, does indicate business income apparently from being self-employed, totaling $5,686. *See* Exhibit B, attached to Trustee's Memorandum of law.

Under the terms of the Order of Confirmation, the Debtor was obligated to make payments totaling $18,624. According to the Final Report and Account of the chapter 13 trustee, dated January 8, 2007, allowed unsecured claims amounted to $49,296.07, which is approximately $20,000 more than the claims listed by the Debtor on Amended Schedule F. *See* Exhibit H, attached to UST's motion.

On May 4, 2006, the Debtor filed a Notice of Conversion of Case to Chapter 7 pursuant to Code 1307(a) on the basis that she was unable to comply with the terms of the plan and did not wish to modify the Plan. According to the UST, at the time the Debtor filed the Notice of Conversion, she had made $8,834.60 in plan payments, or approximately 22 months of payments. *See* Exhibit H, attached to UST's motion.

At the § 341 meeting of creditors held in the converted chapter 7 case on June 19, 2006, in response to questions by the Trustee, the Debtor first acknowledged that she had received an inheritance from her aunt, Inez B. Doetsch, who had died on June 24, 2005. *See* Exhibit C, attached to UST's motion. Notice of her beneficial interest was mailed to her on or about July 28, 2005. *See* Exhibit A, attached to Trustee's Memorandum of Law. Sometime between October 15, 2005 and December 15, 2005, the Debtor acknowledged receipt of monies due her from her aunt's estate.[6] She had not apprised the chapter 13 trustee of the inheritance, however. According to the Debtor's bank account with Visions Federal Credit Union, she deposited the amount of $5,000 into a Primary Share Money Manager Account and $11,961.64 into her Direct

---

[6] There appears to be a discrepancy concerning the Debtor's receipt of the monies. According to the Release, signed by the Debtor, the document was sworn to before a notary on October 15, 2005; however, the document indicates that it was signed by the Debtor on December 15, 2005. *See* Exhibit C, attached to the Trustee's Memorandum of Law.

Checking Account, on January 13, 2006. *See* Exhibit D, attached to UST's motion.

The Debtor indicated that from those monies she spent $2,600 to purchase a new computer, printer and software. *See* Exhibit F, attached to UST's motion (filed by the Debtor as Docket No. 31 in response to the Trustee's motion to compel turnover of the monies). She explained that she had taken the computer to her chemotherapy sessions, which often lasted 5-6 hours. *Id.* She also purchased a television for $1,200, a bed for $655, sheets and clothing for $800, an iPod for $175, and a camera for $1,100. The Debtor explained that she purchased the new television because much of her time was spent in bed resting after the chemotherapy. *Id.* According to the Debtor, she bought a queen size bed for "more comfort," replacing a twin size bed. *Id.* She indicated that she had purchased the iPod for use when walking because she had gained weight due to the chemotherapy. *Id.* According to the Debtor, she spent $1,800 on car repairs/expenses and used $1,230 of the monies to pay county taxes. *Id.* She also repaid a debt of $3,800.[7] *Id.* In addition, she indicated that she used some of the money for expenses such as gas and groceries. Apparently, most of these transactions were debit transactions, rather than credit card transactions.[8]

---

[7] According to the UST, on information and belief, the debt allegedly was one owed to the Debtor's brother, who had repaid the Social Security Administration for monies allegedly owed by the Debtor. Apparently the Debtor had improperly withdrawn funds deposited by the Social Security Administration into her mother's account after her mother had died, and the Debtor had been required to repay those monies. The debt was not listed in the Debtor's schedules, and it is unclear whether the debt arose before or after her Petition was filed in June of 2004.

[8] Under the terms of the Order of Confirmation, the Debtor was "enjoined from incurring any debts in excess of $100.00 without prior approval of the Court, except such debts as may be necessary for emergency medical or hospital care." Paragraph 11 of the Order of Confirmation. It was the Debtor's position that the use of a debit card to make the purchases was not an incurrence of debt and, therefore, did not violate the Order of Confirmation.

## **DISCUSSION**

Pursuant to Code § 348(f)(2), any property acquired by a chapter 13 debtor after commencement of the case and prior to the voluntary conversion becomes property of the chapter 7 estate if the Court concludes that the conversion was in bad faith. *See In re Bell*, 225 F.3d 203, 217 (2d Cir. 2000). The courts that have addressed the issue recognize that the Code does not define "bad faith." *See In re Bejarano*, 302 B.R. 559, 562 (Bankr. N.D. Ohio 2003); *In re Messer*, Case No. 96-550617, 2000 WL 33673748, at *3 (Bankr. M.D.N.C. Nov. 22, 2000); *In re Siegfried*, 219 B.R. 581, 584 (Bankr. D. Colo. 1998). The fact that the Debtor may have taken advantage of the statute in converting her case does not by itself constitute "bad faith." *In re Wiczek-Spaulding*, 223 B.R. 538, 540 (Bankr. D. Minn. 1998). Rather, the Court must make a factual inquiry, analyzing the issue in the context of the totality of the circumstances in the case. *Messer*, 2000 WL 33673748, at *3; *see also Siegfried*, 219 B.R. at 585 and 586 (indicating that "a court should look at the specific facts of the case to determine if there is fraud, deception, dishonesty, lack of disclosure of financial acts or an abuse of the provisions, purpose or spirit of the law").

In *Messer* the debtor filed a petition for relief under chapter 13 on May 10, 1996, and his plan was confirmed on July 30, 1996. *Messer*, 2000 WL 33673748, at *1. The plan provided for a dividend of at least 25% to unsecured creditors. *Id.* On February 4, 1999, the debtor's mother died leaving real property to him. The real property was sold in May 1999, and the net proceeds in the amount of $39,207.97 were turned over to the chapter 13 trustee. *Id.* On June 12, 1999, the trustee filed a motion to modify the debtor's plan to provide for payment of the allowed

unsecured claims in full. The trustee's motion was granted by order of the court on July 18, 1999. *Id.* In the interim, a creditor, who had originally failed to file a proof of claim and had not objected to the trustee's motion, elected to file a proof of claim in the amount of $6,500 to which the debtor objected. *Id.* The trustee had already remitted $17,577.97 to the debtor but postponed further disbursements to the creditors pending the appeal referenced below. *Id.* Allowance of the claim would have meant that the trustee would not have sufficient monies to pay creditors in full as provided in the modified plan. However, the bankruptcy court entered an order disallowing the claim on the grounds that it had not been timely filed. *Id.* at *2. The creditor appealed the court's order. On March 22, 2000, while the appeal was still pending, the debtor filed a motion to convert his case to chapter 7. *Id.* He also filed a claim for an exemption of the monies being held by the chapter 13 trustee. On July 12, 2000, the debtor received a discharge in the chapter 7 case.[9] On July 14, 2000, he filed a motion requesting that the balance of the inheritance proceeds be returned to him. Three days later, on July 17, 2000, the chapter 13 trustee filed a motion seeking authorization to turn the monies over to the chapter 7 trustee. *Id.* The court granted the chapter 13 trustee's motion on October 11, 2000, directing him to disburse the funds to the chapter 7 trustee. Upon review of these facts, the court concluded that it was

> deceptive, abusive and manipulative for the Debtor to wait until his discharge [had] been entered to change his position and now demand that funds held for the payment of his creditors be remitted to him such that the Debtor would receive $39,000 and the creditors would only receive a diminimus [*sic*] dividend in the Chapter 13 with no dividend in the Chapter 7.

*Id.* at *4. Accordingly, the court held that the property acquired by the debtor during the

---

[9] The court suggested the possibility that creditors may not have objected to the debtor's discharge based upon their understanding that their claims were to be paid in full or perhaps reduced by the debtor's $3,500 wild card exemption. *Id.* at *4.

pendency of his chapter 13 case was property of his chapter 7 estate based on a finding of bad faith.

Bad faith "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplated a state of mind affirmatively operating with furtive design or ill will." *Siegfried*, 219 B.R. at 584; *see also Bejarano*, 302 B.R. at 563 (indicating that bad faith as applied to Code § 348(a)(2) "is the notion that some sort of nefarious planning was involved"); *In re Perez*, 345 B.R. 137, 141 (Bankr. D. Del. 2006) (citing *Siegfried* and *Bejarano* and noting that bad faith requires a showing that the debtor has "unfairly manipulated the bankruptcy process to the disadvantage of creditors").

As noted by the court in *Messer*, "[n]ot all conversions from Chapter 13 to Chapter 7 with an intervening inheritance will constitute a bad faith conversion. The facts of each case must be examined." *Messer*, 2000 WL 33673748, at *4 n.4. In the matter presently under consideration, in arguing that the Debtor's conversion was in bad faith, the UST stresses the Debtor's failure to inform the chapter 13 trustee of the receipt of the inheritance.[10] The UST argues that the Debtor's failure to disclose the inheritance "created a vehicle by which the Debtor could spend the full amount of the [i]nheritance and simultaneously discharge her unsecured debts." UST's Motion at ¶ 42. The UST points out that the monies from the inheritance would have satisfied a

[10] According to the March 1, 2006 Amendments to Chapter 13 Standing Trustee Handbook: Revised Appendix C - Required 341 Meeting Statements/Questions, as well as Sample General Questions, the chapter 13 trustee had the discretion to inform a debtor: "If you become a beneficiary of anyone's estate within six months of the date your bankruptcy petition was filed, the trustee must be advised within ten days through your counsel of the nature and extent of the property you will receive. FRBP 1007(b)." *See* www.usdoj.gov/ust, "Significant Guidance Documents." Whether or not the chapter 13 trustee in this case apprised the Debtor of this fact is unknown.

significant portion of her obligations to creditors. Also the UST asserts that not only did the Debtor spend the proceeds from the inheritance largely on luxury goods, rather than on satisfying her existing obligations, but her purchases allegedly were made shortly before she converted her case to chapter 7.[11] The UST argues that the Debtor was certainly aware of her obligation to turn over monies received postpetition, as evidenced by the fact that she requested that she be allowed to retain a portion of her 2005 tax refunds in excess of $1,500, which the Trustee indicates amounted to $900.

In addition to the Debtor's failure to report receipt of the inheritance until questioned by the Trustee on August 14, 2006, the Trustee also notes the Debtor's failure to disclose in her original schedules that she had any bank accounts,[12] as well as her failure to identify the business income received from a part-time job, which became evident upon review of her 2004 tax returns. These failures on the part of the Debtor, according to the Trustee, represent a pattern aimed at avoiding having to make assets available for distribution to her creditors.

A review of the docket in this case indicates that the Debtor was current with her payments while in chapter 13. Indeed, she had paid a total of $8,834.60, of the $18,624 to which she had committed under the terms of the Order of Confirmation. Her decision to convert her case appears to have been made in response to the chapter 13 trustee's notice in his letter of April

---

[11] The Debtor filed her Notice of Conversion to chapter 7 on May 4, 2006. The Statement of Account, submitted by the UST with its motion as Exhibit D, includes transactions only in January 2006, the same month in which the Debtor deposited the funds from the inheritance into her accounts with Visions Federal Credit Union and some four months prior to the conversion of her case.

[12] The Debtor alleges that she had at least two bank accounts when she filed her Petition in 2004 and opened at least three more during the administration of the chapter 13 case. *See* Trustee's Memorandum of Law.

24, 2006 that her plan was not feasible "by close to $14,000." The Notice of Conversion was filed on May 4, 2006, approximately a week and a half after the letter from the chapter 13 trustee had been sent to her. According to her amended Schedules I and J, also filed on May 4, 2006, her disposable income was such that it appears that continuing in the chapter 13 was an impossibility, particularly since the allowed claims were substantially more than originally scheduled by the Debtor in June 2004.

The Court notes that the Debtor received notice of a possible beneficial interest in her aunt's estate in late July 2005, approximately eight months after confirmation of her Plan and more than a year after she filed her Petition. This is well beyond the six month requirement referenced in the "Sample General Questions (to be asked when deemed appropriate)" No. 5 in Revised Appendix C of the Chapter 13 Trustee Handbook as referenced at Footnote 10. The Court notes that Statement/Question 5 makes reference to Rule 1007(h) of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P."). Fed.R.Bankr.P. 1007(h) incorporates by reference Code § 541(a)(5), which refers to an inheritance acquired by a debtor within 180 days of the filing of the petition. Thus, there is some question whether it would have been obvious to the Debtor that she was required to advise the chapter 13 trustee of an inheritance received beyond the 180 day postpetition period.

According to the chapter 13 trustee, her payments were being made via wage order, eliminating any active participation by the Debtor in the form of sending monthly checks to the chapter 13 trustee. There was no motion to dismiss her case filed by the chapter 13 trustee. Nor was there any motion by a secured creditor seeking relief from the automatic stay. It was not until February 2006 that she found it necessary to become actively involved in the chapter 13 by

requesting that she be allowed to retain a portion of her 2005 tax refunds. It is not disputed that she had been diagnosed with ovarian cancer in November 2005 and had undergone two months of chemotherapy, during which time she lost her part-time job and was unable to work at her regular job for a time. Admittedly, this was also at a time when she had received the inheritance and in reaction to her situation spent the monies on what the UST has described as "luxury" items.

The Court is at a loss to find that the Debtor's actions stemmed from some sort of nefarious plan to deprive her creditors of their monies or that she was operating with some "furtive design or ill will" when she unexpectedly received the inheritance monies and proceeded to allegedly payoff her brother and to purchase items which, while certainly not necessities, for the most part, in her medical condition may reasonably have served to make her life more comfortable. While this may have represented a lack of good judgment on her part given her prepetition obligations, the UST has not demonstrated any pattern of fraud or deception on the part of the Debtor. The allegations by the Trustee that she accrued an additional $7,000 in debt postpetition and preconversion is not supported by any amended schedules subsequent to those filed by the Debtor in June 2004. There are allegations that she failed to disclose her part-time job. However, if one compares the gross income stated on her 2004 Federal tax return of $59,180 per year, which includes the "business income," with that listed on the Debtor's Amended Schedule I, filed in June 2004 of $59,283.84, it does not appear that the Debtor was attempting to conceal any income.

Unlike the debtor in *Bejarano* who had made only one payment while in chapter 13 and incurred significant additional debt postpetition and preconversion, this Debtor had managed to

pay $8,834.60 in plan payments prior to conversion. There is also no evidence that she has accumulated additional postpetition debt. Had she originally filed a chapter 7 petition, the inheritance would not have been included as property of the estate and her unsecured creditors would not have received anything. *See* Code § 541(a)(5)(A). The UST makes the argument that the fact that she requested a portion of her tax refunds gives an indication that she was well aware that she had an obligation to turn such monies over to the chapter 13 trustee. The Court is not privy to what the Debtor was told by either her attorney or the chapter 13 trustee regarding any tax refunds received during the term of the plan. The Order of Confirmation does require that she provide the chapter 13 trustee with copies of her returns but says nothing about the turnover of tax refunds. The Court also notes that ¶ 13 of the Order of Confirmation explicitly provides that property "not proposed or reasonably contemplated to be distributable to claimants" shall be revested in the Debtor, albeit upon approval of the Court and the Chapter 13 Trustee. At the time the Debtor's Plan was confirmed, it does not appear from the facts presented that there was any reasonable contemplation that she would be receiving an inheritance that would have to be distributed to creditors. Nonetheless, it is also true that the Debtor did not seek approval of either the Court or the Chapter 13 Trustee. However, under the totality of the circumstances, including the fact that the monies from the inheritance were received at about the same time that the Debtor was dealing with her life-threatening medical condition, the Court concludes that the Debtor's conversion to chapter 7 was not in bad faith.

Based on the foregoing, it is hereby

ORDERED that the UST's motion pursuant to Code § 348(f)(2), seeking a determination that the inheritance received by the Debtor in late 2005 is property of the chapter 7 estate, is

denied; and it is further

ORDERED that the Trustee's motion seeking an order compelling the Debtor to turn over the inheritance, as well as the 2006 tax refunds, is denied.

Dated at Utica, New York

this 12th day of September 2007

/s/ Hon. Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge